UNITED STATES of America, Plaintiff,

v.

Michael GILLIS, Defendant.

No. 95–1468M.

United States District Court,
D. Colorado.

Oct. 3, 1995.

Larry Dean Allen, Cañon City, CO, for defendant.

Gary Begun, Special Asst. U.S. Atty., for U.S.

## MEMORANDUM OPINION AND ORDER

BORCHERS, United States Magistrate Judge.

THIS MATTER came before the Court in Colorado Springs, Colorado for trial on September 15, 1995. Plaintiff was represented by Gary Begun, Special Assistant United States Attorney, and Defendant was represented by Larry Dean Allen. The Court heard the testimony of witnesses for both sides and received exhibits from the parties. The matter then was taken under advisement.

### I.

Defendant is a professional outfitter and guide. His business is located in Florence, Colorado, which is in Fremont County in the south central part of the state. As an outfitter, Defendant is retained by individuals who wish to hunt wild game. Defendant apparently specializes in hunting for bear and mountain lions.

The evidence at trial indicated that Defendant has applied on a yearly basis for a special permit with the Bureau of Land Management (BLM). This special permit allows Defendant to take clients onto land administered by BLM to hunt for wildlife. On January 12, 1995, the date germane to this case, Defendant had been issued a special permit by the BLM office in Cañon City, Colorado.

The evidence presented to the Court is not in dispute. On January 12, 1995, Defendant and other individuals travelled north of Cañon City, Colorado to what is known as the "Shelf Road." This road is a former roadbed for a narrow gauge railroad that once ran to Cripple Creek and Victor, Colorado. The road is narrow and difficult to maneuver on at certain parts.

Defendant was driving in his truck and pulling a horse trailer. In the horse trailer were several horses. Some dogs also were along with the group, as the dogs were to be used for trailing mountain lions. Defendant had been hired by an individual to lead the search for a mountain lion, but Defendant was not to be paid by the client unless a mountain lion was killed.

Defendant travelled for some time and came to a fork in the road. There was a parking area next to this road, and Defendant pulled into the parking area with his truck and horse trailer. Defendant testified, and the Court so finds, that the "Shelf Road" was too narrow to allow continuation with the truck and horse trailer.

This parking area was adjacent to the "Shelf Road", which is a Fremont County maintained road. This parking area is apparently on BLM administered land, though Defendant testified that he thought he had parked on land owned by John Wilson. The testimony of Ranger Jack Hagen of the BLM indicated that the "Shelf Road" and the surrounding area are a mosaic of lands privately owned and lands administered by various governmental agencies.

After parking his truck, Defendant and the other individuals unloaded the horses and headed up the "Shelf Road" on horseback. The dogs accompanied the group. Defendant testified, and the Court so finds, that he and others hunted that day on property owned by John Wilson. Defendant testified that he has a working arrangement with Mr. Wilson concerning fees to be charged for use of the land. Defendant testified that the group hunted for mountain lion until mid-afternoon, when the hunting dogs became tired.

The group left Mr. Wilson's property and headed back down the "Shelf Road." When the group arrived at the parking area, Ranger Hagen was present. The Ranger talked with Defendant and then issued two violation notices. The charges against the Defendant were for failing to contact BLM personnel before entering government land and in not displaying a copy of the special permit when directed to do so by Ranger Hagen.

Defendant appeared before the Court for arraignment and entered a plea of not guilty. Plaintiff then consented to a trial before a Magistrate Judge, but waived his right to a jury trial. Any additional facts necessary for resolution of this case will be set forth in the next section.

## II.

Defendant was charged with two violations of 43 C.F.R. § 8372.0–7(a)(2). This regulation was promulgated by the Secretary of the Interior pursuant to 43 U.S.C. § 1733. The regulation states as follows:

(a) Prohibited acts. On all public lands and related waters, it is prohibited to: (1) Fail to obtain a permit and pay any fee required by this subpart; (2) violate stipulations or conditions of a permit issued under the authority of this subpart; (3) participate knowingly in an event or use subject to the permit requirements on this subpart where no such permit has been issued; (4) fail to post a copy of any commercial or competitive permit where all participants have the opportunity to read it; and (5) fail to show a copy of the special recreation permit to a Bureau of Land Management employee or a participant upon request.

(b) Penalties. (1) Any person convicted of committing any prohibited act in this subpart, and violators of regulations or permit terms or stipulations, may be subject to a fine not to exceed $1,000 and/or imprisonment not to exceed 12 months. (2) Authorized as well as unauthorized users may be subject to civil action for unauthorized use of the public lands or related waters and their resources, or violations of the permit terms or stipulations.

Defendant applied for and secured a permit from the BLM office in Cañon City, Colorado. The permit held by Petitioner on January 12, 1995 was issued on December 19, 1994. The permit was issued by L. Mac Berta, Area Manager for BLM. The permit (Exhibit 3) reads, in part, as follows:

Under the authority of the Code of Federal Regulations subpart 8372.5 Terms: section (4)(b) Stipulations, "A special recreation permit will contain such stipulations as the authorized officer (Area Manager) considers necessary to protect the land and resources and the public interest in general."

The following stipulations as imposed by the authorized officer will be placed on your 1995 Lion/Bear Special Recreation Permit and will remain in effect throughout the duration of the permit.

1. A legible copy of the enclosed Special Recreation Application and Permit (Form 8370–1) must be in the possession of all authorized representatives of your company. Failure to meet this stipulation may result in permit cancellation.

2. Your application for a 1995 Colorado State Outfitters License should be received by the State Outfitter Registration Office by Monday, January 30, 1995. The Colorado State Outfitters Office will be contacted to ensure a renewal application has been submitted. In addition, you are required to mail this office a copy of your 1995 State Outfitters License. Failure to meet this stipulation will void your 1995 Special Recreation Permit.

3. You should contact the BLM Resources Area you are permitted to hunt/guide in before entering public lands. At this contact, the permittee or permittee's guide will indicate the specific public lands being entered, the number of clients, and the number of days for this trip.

There is no dispute that Defendant did not have a copy of the permit with him when contacted by Ranger Hagen on January 12, 1995. There is disputed evidence as to whether contact was attempted with the BLM office on January 12, 1995.

Defendant has maintained that no violation of the permit occurred, because he and his group did not hunt on BLM land on January 12, 1995. Defendant maintains further that the permit stipulations were not applicable, as he simply parked his truck and trailer and then rode by horseback up the "Shelf Road" to the John Wilson property. Plaintiff's position is that the permit stipulations were in effect and had to be followed by Defendant.

The Court has not found any published or unpublished cases dealing with 43 C.F.R. 8372.0–7(a). Neither side in this case has pointed to any applicable or analogous case law. The Court will need to examine the regulation in conjunction with cases decided concerning similar regulations promulgated by other governmental agencies.

There is little question that the United States Government, through its agencies, can regulate activities on federally owned or controlled property. *United States v. Brown*, 431 F.Supp. 56 (D.Minn.1976). Regulations can be promulgated to control activities and to provide for criminal penalties for violation of those regulations. *United States v. Richard*, 636 F.2d 236 (8th Cir.1980), *cert. denied* 450 U.S. 1033, 101 S.Ct. 1745, 68 L.Ed.2d 228 (1981); *United States v. Garren*, 893 F.2d 208 (9th Cir.1989); *United States v. Richard*, 636 F.2d 236 (8th Cir.1980). It also is permissible for agencies to regulate the activities of outfitters on government lands. *United States v. Hussong*, 778 F.2d 567 (10th Cir.1985); *United States v. Patzer*, 15 F.3d 934 (10th Cir.1993); *United States v. Peterson*, 897 F.Supp. 499 (D.Colo.1995).

The evidence presented to the Court indicated that the "Shelf Road" was a public road maintained by Fremont County. The parking area was adjacent to the public road and accessible by anyone travelling on the road. The evidence presented clearly showed that Defendant and his ground had *not* hunted on BLM land on January 12, 1995, but had hunted on the private property of John Wilson. Defendant testified that he hunted on private property because he had not been able to talk with anyone at the BLM office in Cañon City to advise them that he wanted to hunt on BLM land. The Court finds this testimony believable and consistent with all other evidence. The question then is whether the permit stipulations applied to the parking of the truck and horse trailer in the area adjacent to the "Shelf Road."

This case is not one where a commercial venture was being undertaken on federal land, with an outfitter arguing that he was not present or not being paid for his efforts. *United States v. Richard, supra; United States v. Hussong, supra; United States v. Peterson, supra.* Defendant was using a public parking area that was available to anyone travelling up the road. The issue raised in *Wilkenson v. Department of Interior*, 634 F.Supp. 1265 (D.Colo.1986) provides some guidance for the present case. In *Wilkenson*, a rural resident of Mesa County, Colorado brought a civil action against the Secretary of the Interior concerning attempts by the National Park Service (NPS) to control access to a portion of a public roadway within the Colorado National Monument. The NPS had attempted to prohibit all commercial traffic, and this action was held to be a violation of the public right-of-way. The road within the Monument had been a public access to areas outside of the Monument for years. The NPS was prohibited from attempting to prohibit all commercial traffic from crossing the Monument.

The facts of this case must be examined in a common sense manner when applied to the stipulations of the permit. First, the permit requires in # 3 that the BLM Resource Area Office must be contacted and provided information as to the "specific public lands being entered, the number of clients, and the number of days for the trip." The clear intent of this stipulation is to require information as to hunting that is to take place on BLM land. No such hunt took place on BLM land in January 12, 1995. Defendant parked his vehicle on the public lot, removed the horses, went down the "Shelf Road", and entered into the property of John Wilson. To follow the prosecution's argument, Defendant would have been required to contact the BLM Resource Area and advise that he might park his vehicle in the public parking area. Such a requirement would be inconsistent with the stipulations requirement that information as to public lands being entered be provided. No public lands were being entered for commercial lion outfitting. The permit was issued for commercial outfitting. Since no hunting took place on BLM lands, no requirement existed under the stipulations of the permit for the BLM to be notified. The parking of the truck and trailer did not activate this stipulation where no hunting took place on BLM lands.

Second, Plaintiff's argument regarding the stipulation that a copy of the permit be presented when requested by a BLM employee rests on an overly broad view of the permit conditions. The permit was issued to allow commercial lion outfitting on BLM lands. The permit was to be presented when requested, but such request would have to be related to hunting activities on public lands.

Otherwise, the permit could be requested at any time and any place, on or off BLM lands. The stipulation properly required any employee of Defendant (including Defendant) to present a copy of the permit when on BLM lands hunting mountain lions.

Third, the evidence presented indicated that the parking area was near the fork in the road. It was not disputed that the "Shelf Road" narrowed and was not usable by large vehicles. The parking area was open to the public and provided a point were vehicles could be left when utilizing BLM lands. The parking area was apparently not marked and could be used by anyone who was travelling. The parking area is not dissimilar to the right-of-way discussed in *Wilkenson*. Entrance into the parking area did not constitute use of BLM lands for outfitting purposes or for another purpose. Had Defendant driven to the parking area and dropped off individuals who then entered on BLM lands for hunting purposes, then the situation would be different. *United States v. Hussong, supra; United States v. Peterson, supra.* In this case, the evidence presented to the Court indicates that Defendant did not enter any BLM property beyond the parking area and did not conduct any hunt on BLM property. The parking area, being open to the public, is not an area where the permit stipulation is triggered, when only parking is involved.

For the reasons set forth herein and based upon the specific facts of this case, the Court has determined that the charges against Defendant have not been sustained. The Court cannot find that the stipulations of the permit were violated.

IT IS HEREBY ORDERED that Defendant is found not guilty of both charges and this case is dismissed with prejudice.